## UNITED STATES v. FIRST NATIONAL PICTURES, Inc., et al.

District Court, S. D. New York.
June 29, 1931.

John Lord O'Brian, Asst. to Atty. Gen., and Charles H. Weston and John Harlan Amen, Sp. Assts. to Atty. Gen.

Cadwalader, Wickersham & Taft, of New York City (Cornelius W. Wickersham, Paxton Blair, Arthur L. Fisk, Jr., and Gabriel L. Hess, all of New York City, of counsel), for defendants.

WOOLSEY, District Judge.

A decree on mandate will be signed and filed in the form hereto annexed.

I. This suit was remanded to this court by the Supreme Court after a successful appeal by the government from a decree by Judge Thacher dismissing the complaint for the reasons stated in his opinion, which is reported as United States v. First National Pictures, Inc. (D. C.) 34 F.(2d) 815.

The gist of the decision of the Supreme Court, which is reported as United States v. First National Pictures, Inc., et al., 282 U. S. 44, 51 S. Ct. 45, 75 L. Ed. 151, is contained in a statement made by Mr. Justice McReynolds after he had summarized the effect on the motion picture industry of the Rules and Regulations for the Establishment and Operations of a Credit Committee, copies of which were annexed to the government's petition and constituted the gravamen thereof.

Mr. Justice McReynolds said at page 53 of 282 U. S., 51 S. Ct. 45, 48:

"The definite point of attack in this proceeding is the agreement for the creation and operation of the credit committees and their use under prescribed rules to restrict freedom of sales by distributors and of purchases by exhibitors.

"Ten producers and distributors of films, controlling 60 per cent. of the business, agreed to contract with exhibitors only according to a standard form, and then combined through thirty-two local film Boards of Trade with other distributors, who with themselves control 98 per cent. of the entire business. The film boards appoint credit committees, and these operate under the rules above outlined. The obvious purpose of the arrangement is to restrict the liberty of those who have representatives on the film boards and secure their concerted action for the purpose of coercing certain purchasers of theaters by excluding them from the opportunity to deal in a free and untrammeled market.

"Reference to what has just been said in Paramount Famous Lasky Corporation v. United States, 282 U. S. 30, 51 S. Ct. 42, 75 L. Ed. 145, and to the opinions in Eastern States Lumber Ass'n v. United States, 234 U. S. 600, 34 S. Ct. 951, 58 L. Ed. 1490, L. R. A. 1915A, 788; United States v. American Oil Co., 262 U. S. 371, 43 S. Ct. 607, 67 L. Ed. 1035; Binderup v. Pathe Exchange, 263 U. S. 291, 44 S. Ct. 96, 68 L. Ed. 308; and Anderson v. Shipowners' Ass'n, 272 U. S. 359, 47 S. Ct. 125, 71 L. Ed. 298, will suffice, we think, to show the challenged arrangement conflicts with the Sherman Anti-Trust Act (15 USCA §§ 1–7, 15)."

It appears, therefore, that on the basis of the credit rules mentioned, the Supreme Court held that the Government has established in this suit a conspiracy, in conflict with the Sherman Anti-Trust Act (15 USCA §§ 1–7, 15), to restrain interstate trade.

II. It is not fitting for me in the face of that decision to attempt to determine what part, if any, of those credit rules, so condemned in their entirety by the Supreme Court, are not objectionable; but that is, in effect, what the defendants ask me to do in their proposed decree.

The case having been remanded for further proceedings in conformity with the opinion of the Supreme Court, the only question now before me is the form of decree which should be entered on the mandate, heretofore filed herein, in order to embody the decision of the Supreme Court.

III. The purpose of a decree such as is to be entered here is twofold: 1. To denounce the conspiracy held illegal by the Supreme Court; and (2) to prevent the continuance of that conspiracy or the creation of another identic conspiracy or other identic conspiracies by the parties, or of the repetition by the defendants in substituted forms of the acts found to be illegal.

[3] IV. The wording of the decree, however, has to be precise enough in its injunctive provisions to enable the parties to know whether they are acting at any time within the terms of its prohibitions.

As an injunction necessarily speaks in futuro, it is a task of some nicety so to word it as to accomplish this result. Cf. Swift & Co. v. United States, 196 U. S. 375, at pages 396 and 401, 25 S. Ct. 276, 49 L. Ed. 518.

V. After giving careful consideration to the contentions of the respective parties, it seems to me that the annexed decree will accomplish these purposes because (1) it is unequivocal with regard to the conspiracy which has been condemned; and (2) in the terms of the injunction it avoids, as far as is possible consonant with the relief to which the United States is entitled, any uncertainty as to the limits of the prohibitions imposed on the defendants.

That injunctive provisions should be definite is, of course, a prime desideratum in a decree of which the sanction is the penalty for contempt of court.

But if, when the defendants come to operate under this decree, it should turn out that the border line drawn therein between permissible and nonpermissible acts seems to them to be somewhat blurred, it should be borne in mind by them that it does not lie in the mouths of those who have brought about the situation necessitating injunctive relief, to complain if there is a zone near the border line of the permissible within which they feel uneasy. If such a feeling is induced, it may, indeed, have a salutary cautionary effect on the defendants and tend to prevent them from getting into forbidden territory.

VI. I believe the form of decree[1] annexed as schedule A hereof, follows the let-

ter and embodies the implications of the Supreme Court's decision, and I shall therefore sign the decree on mandate herein in that form.

---

Now, therefore, upon motion of the petitioner, by George Z. Medalie, Esq., United States Attorney for the Southern District of New York, John Lord O'Brian, Esq., the Assistant to the Attorney General, John Harlan Amen, Esq., and Charles H. Weston, Esq., Special Assistants to the Attorney General, of counsel, for relief in accordance with the prayer of the petition, and the defendants having appeared by their attorneys, Messrs. Cadwalader, Wickersham & Taft, and Cornelius W. Wickersham, Esq., Arthur L. Fisk, Jr., Esq., and Gabriel L. Hess, Esq., of counsel, and submitted a different form of decree, it is ordered, adjudged, and decreed as follows:

First: That by reason of the mandate of the Supreme Court issued November 24, 1930, and filed in this court on January 20, 1931, the decree of this court, filed and entered herein on December 23, 1929, whereby the petition herein was dismissed on the merits, be and it hereby is vacated and set aside.

Second: That (1) the agreement of the defendant distributors to cause each defendant Film Board of Trade to adopt Rules and Regulations for the Establishment and Operations of a Credit Committee, a copy of which Rules and Regulations is attached to the petition herein as Exhibit A; (2) the adoption of said rules and regulations by each defendant Film Board of Trade; and (3) the carrying on of interstate commerce in motion picture films by the defendant distributors in conformity with the provisions of said rules and regulations constitute a conspiracy in restraint of interstate trade and commerce in violation of the Act of Congress of July 2, 1890, entitled "An Act to Protect Trade and Commerce against Unlawful Restraints and Monopolies," commonly known as the Sherman Anti-Trust Act.

Third: That the defendants, their officers, agents, servants, and employees, and all persons acting under, through, or on behalf of them, or any of them, hereby are perpetually enjoined, restrained, and prohibited, individually and collectively:

1. From further engaging in or carrying out said conspiracy or any other conspiracy similar to, or having a purpose or effect similar to said conspiracy.

2. From doing any act or thing whatsoever having the same purpose or effect as the acts done in pursuance of said conspiracy, or promoting, or tending to promote, any of the purposes and effects thereof.

3. From enforcing or carrying out, directly or indirectly, any of the provisions of the aforesaid rules and regulations or any other rules or regulations identical therewith or similar thereto, or having the same purpose or effect as the aforesaid rules and regulations.

4. From retaining any sum or sums heretofore received from any exhibitors of motion pictures in the United States by virtue of the operation or enforcement of the aforesaid rules and regulations.

5. From entering into any understanding, arrangement, combination, conspiracy, or agreement (1) to refrain, either for a limited or an unlimited period of time, from entering into any contract for licensing the exhibition of motion pictures, or (2) to require the deposit of security by the licensee as a condition of entering into any such contract with such licensee.

Fourth: The provisions of this decree shall not be construed, however,

1. As prohibiting any defendant distributor, or any member of any defendant Film Board of Trade, from exchanging either directly or through a committee or other agency, information concerning the financial or moral responsibility of any exhibitor of motion pictures in the United States; always provided that there shall not be made, in connec-

---

[1] Final Decree.

This cause having come on for hearing before this court and having been determined by a decree entered December 23, 1929, from which the petitioner appealed to the Supreme Court of the United States, which has reversed the decree of this court and issued its mandate, filed herein January 20, 1931, remanding the cause:

tion with or in supplement of such exchange of information, any comment in the nature of a recommendation as to any action to be taken thereon; or

2. As prohibiting, restraining, or interfering with the action of any single company or firm, which is a defendant herein, by its or their officers, agents, or employees, whether such officers, agents, or employees are themselves made parties hereto or not, from acting with respect to its or their own corporate or firm business, property, or affairs, entirely independently and free from any agreement or understanding with any other defendant distributor or defendant Film Board of Trade, or member thereof.

Fifth. Jurisdiction of this cause is hereby retained

1. For the purpose of enforcing this decree and of making such other and further orders and decrees as may become necessary herein; and

2. For the purpose of enabling any party hereto to apply to the court for such further orders and directions as may be necessary or proper in relation to carrying out the enforcement of the provisions of this decree; or

3. For the purpose of applying to the court for a modification of this decree, if it be hereafter shown to the satisfaction of the court that, by reason of changed conditions or changes in the statute law of the United States, the provisions hereof have become inadequate or inappropriate, or unduly oppressive to the defendants, and are no longer necessary to secure the maintenance of conditions in harmony with the law.